**IN THE UNITED STATES DISTRICT COURT**
**FOR THE WESTERN DISTRICT OF PENNSYLVANIA**


| | | |
|---|---|---|
| **DR. G. MARISA KELLY-PIMENTEL** | : | **CIVIL ACTION** |
| | : | |
| | : | |
| **v.** | : | **NO. 15-1463** |
| | : | |
| **PENNSYLVANIA DEPARTMENT OF** | : | |
| **CORRECTIONS,** *et al.* | : | |


**KEARNEY, J.**                                                                                          **April 13, 2017**

<u>**MEMORANDUM**</u>

Commonwealth employees claiming race discrimination denied them a promotion are entitled to pursue their claim through the State Civil Service Commission and, if necessary, the Pennsylvania Commonwealth Court.   We are faced today with a Commonwealth employee disappointed by state officials' decision to select another candidate for promotion.   While pursuing remedies in the Civil Service Commission, she sued in this Court challenging the same decision alleging the decision-makers exhibited discriminatory intent by promoting another qualified candidate rather than her.   Both the Civil Service Commission (after evidentiary hearings) and the Commonwealth Court (on appeal) found no evidence of race discrimination. She now asks to try again in this Court.  Under the collateral estoppel doctrine, we cannot revisit issues fully and finally litigated.  Even if collateral estoppel did not bar our re-litigation of these same claims, the disappointed employee must adduce evidence to overcome an extensive summary judgment motion seeking to dismiss claims against supervisors. Absent genuine issues of material fact both as to the collateral estoppel bar and on the merits, we grant Defendants' motion for summary judgment in the accompanying Order.

## I.   Undisputed Facts[1]

The Pennsylvania Department of Corrections (the "Department") employed Dr. Kelly-Pimentel as an Adult Basic Education Teacher at the State Correctional Institution at Greene ("SCI-Greene").[2] The Department provides education services to inmates through the Bureau of Correction Education ("BCE").[3] It is the Department's policy to provide "a full range of centralized educational services consisting of academic education, vocational education, recreation services, library services, and special education, as well as educational testing and academic and vocational counseling" with a goal of preparing inmates for the General Education Development ("GED") examination.[4]

The Department is an "administrative department" within the Commonwealth of Pennsylvania and is headed by the Secretary of Corrections, Defendant John E. Wetzel.[5] Secretary Wetzel supervises the Executive Deputy Secretary, Defendant Shirley Moore Smeal.[6] Defendant Steven Davy served as the Director of BCE during the relevant time period and reported to Executive Deputy Secretary Moore Smeal.[7]

Director Davy supervised three Education Administration Managers, each covering the Eastern Region, Western Region, and Specialized Facilities/Programs. In February 2014, the Education Administration Manager for the Western Region announced his retirement, and the Department issued a job posting seeking candidates to fill this Civil Service position.[8]   Eight candidates applied for the Western Region Manager position including Dr. Kelly-Pimentel, an African-American woman, and Terri Fazio, a Caucasian woman.[9] Dr. Kelly-Pimentel, an Adult Basic Education Teacher at SCI-Greene, began working for the Department in 1988, and worked in other corrections education positions including as Principal at SCI-Greene and Academic Counselor at SCI-Pittsburgh.[10]   Ms. Fazio began working for the Department in 1990, held the

position of Principal at SCI-Waymart, and worked in other corrections education positions including as an Adult Basic Education Teacher and Academic Counselor.[11]

Director Davy and Executive Deputy Secretary Moore Smeal interviewed six candidates for the Western Region Manager position including Dr. Kelly-Pimentel and Ms. Fazio.[12] Director Davy and Executive Deputy Secretary Moore Smeal asked all candidates the same questions and noted the candidates' responses.[13] Director Davy and Executive Deputy Secretary Moore Smeal additionally considered application packets submitted by Dr. Kelly-Pimentel and Ms. Fazio. [14]

Director Davy and Executive Deputy Secretary Moore Smeal each individually ranked the candidates with each selecting Ms. Fazio as the top candidate.[15] Dr. Kelly-Pimentel ranked fifth.[16] Secretary Wetzel did not interview or rank the candidates or participate in the decision to select Ms. Fazio for the position.[17]

Director Davy and Executive Deputy Secretary Moore Smeal selected Ms. Fazio for the Education Administration Manager position on May 22, 2014.[18] Ms. Fazio did not immediately assume the position because the Department implemented a hiring freeze on May 27, 2014 due to budget concerns.[19] Ms. Fazio became an acting Education Administration Manager effective July 6, 2014.[20] Director Davy and Executive Deputy Secretary Moore Smeal signed an Equal Employment Review Certificate and submitted it to the Department's Equal Employment Opportunity Office.[21] The Equal Opportunity Officer approved the Equal Employment Review Certificate for Ms. Fazio's position on September 2, 2014.[22] The Department then notified the remaining candidates, including Dr. Kelly-Pimentel, they were not selected for the Education Administration Manager position.[23]

On September 9, 2014, Dr. Kelly-Pimentel emailed Brittany Chizar, Human Resource

Assistant for the Department, copied to Secretary Wetzel and Raphael Chieke, the Director of the Office of Equal Employment Opportunity, expressing her disagreement "the person selected [Ms. Fazio] was more qualified for the position"[24] than she. Dr. Kelly-Pimentel then appealed to the State Civil Service Commission, challenging the Department's decision to hire Ms. Fazio for the Education Administration Manager position as motivated by race discrimination.[25]

The State Civil Service Commission held evidentiary hearings on February 26, 2015 and April 30, 2015.[26] On December 18, 2015, the State Civil Service Commission issued a 49-page opinion dismissing her appeal, finding Dr. Kelly-Pimentel failed to present evidence establishing discrimination.[27] On January 15, 2016, Dr. Kelly-Pimentel appealed the State Civil Service Commission's decision to the Pennsylvania Commonwealth Court.[28] Dr. Kelly-Pimentel argued the State Civil Service Commission erred in finding no discrimination.[29] The Pennsylvania Commonwealth Court affirmed the State Civil Service Commission's conclusion Dr. Kelly-Pimentel "failed to put forth sufficient evidence to demonstrate technical discrimination" and "failed to present evidence of traditional, race-based discrimination."[30]

On November 9, 2015, after the State Civil Service Commission's evidentiary hearings but before it issued its adjudication, Dr. Kelly-Pimentel filed her complaint in this Court against the Department, Secretary Wetzel, Executive Deputy Secretary Moore Smeal, and Director Davy alleging race-based employment discrimination in violation of Title VII.[31] After the close of discovery, Defendants move for summary judgment on Dr. Kelly-Pimentel's remaining § 1983 equal protection claim against the individual Defendants.

## II. Analysis[32]

Defendants primarily argue Dr. Kelly-Pimentel's claims of discrimination are precluded under the doctrine of collateral estoppel by the Commonwealth Court's February 1, 2017 decision affirming the State Civil Service Commission (the "Commission"). Defendants alternatively argue, if collateral estoppel does not apply to preclude Dr. Kelly-Pimentel's claim, Secretary Wetzel is entitled to summary judgment because there is no evidence to support a supervisory liability claim against him and there is no evidence to support race-based discrimination against Executive Deputy Secretary Smeal Moore and Director Davy.

### A. Dr. Kelly-Pimentel's claims are barred by collateral estoppel.

Collateral estoppel, also known as issue preclusion, "prevents parties from relitigating an issue that has already been actually litigated."[33] "When a prior case has been adjudicated in a state court, federal courts are required by 28 U.S.C. § 1738 to give full faith and credit to the state judgment and, in section 1983 cases, apply the same preclusion rules as would the courts of that state."[34] We are directed to "look principally to *state* law in deciding what effect to give state-court judgments."[35]

Under Pennsylvania law, relitigation of an issue is barred by collateral estoppel where: "(1) the issue decided in the prior adjudication was identical with the one presented in the later action; (2) there was a final judgment on the merits; (3) the party against whom the plea is asserted was a party or in privity with a party to the prior adjudication; and (4) the party against whom it is asserted has had a full and fair opportunity to litigate the issue in question in a prior action."[36] We apply the four factor test to determine whether the Commonwealth Court's findings are entitled to preclusive effect.

1. **The issue decided in the Commonwealth Court is identical to the issue in this action.**

Dr. Kelly-Pimentel appealed her "non-selection" for promotion under Section 951(b) of the State Civil Service Act (the "Act") providing "[a]ny person who is aggrieved by an alleged violation of section 905.1 of this act may appeal in writing to the commission . . .. Upon receipt of such notice of appeal, the commission shall promptly schedule and hold a public hearing."[37] Section 905.1 provides: "*No officer or employe of the Commonwealth shall discriminate against any person in* recruitment, examination, appointment, training, *promotion*, retention *or any other personnel action* with respect to the classified service because of political or religious opinions or affiliations because of labor union affiliations or *because of race*, national origin or other non-merit factors."[38]

In her appeal before the Commission, Dr. Kelly-Pimentel alleged both "technical" and "traditional" discrimination on the basis of race in violation of the Act. "'Traditional' forms of discrimination focus upon such factors as race, sex or age" while "'technical' discrimination involves a violation of procedures required pursuant to the Act or related Rules."[39] In her "traditional" discrimination claim, Dr. Kelly-Pimentel alleges the Department did not select her for the Education Administration Manager position because of her race, relying on a disparate-impact theory first recognized in *Griggs v. Duke Power Co.*[40] and discrimination in violation of the Act under the standards in *Henderson v. Commonwealth of Pa.*[41]

Dr. Kelly-Pimentel characterizes her disparate impact claim as a "built-in headwinds theory."[42] In *Griggs*, the Supreme Court first recognized a disparate impact claim finding Title VII requires "the removal of artificial, arbitrary, and unnecessary barriers to employment when the barriers operate invidiously to discriminate on the basis of racial or other impermissible classification." [43] Title VII "proscribes not only overt discrimination but also practices that are

fair in form, but discriminatory in operation."[44] A plaintiff need not prove intent in a disparate impact case because "good intent or absence of discriminatory intent does not redeem employment procedures or testing mechanisms that operate as 'built-in headwinds' for minority groups and are unrelated to measuring job capability."[45] We construe Dr. Kelly-Pimentel's reference to her claim as a "build-in headwinds" theory as a disparate impact claim.

In *Henderson*, the Commonwealth Court adopted the standard of proof for "traditional" discrimination claims under Section 905.1 of the Act as applied by the Pennsylvania Supreme Court in *Allegheny Housing Rehab. Corp. v. Pa. Human Relations Comm'n*[46] which in turn is a modified version of the *prima facie* analysis of *McDonnell Douglas Corp. v. Green*, a disparate treatment claim.[47] Under *Henderson*, a claim of "traditional" discrimination under the Act first requires a plaintiff make a *prima facie* case of discrimination "by producing sufficient evidence and, if believed and otherwise unexplained, indicates that more likely than not discrimination has occurred."[48] When a plaintiff satisfies the *prima facie* case, "a presumption of discrimination arises which, if not rebutted by the appointing authority, becomes determinative of the factual issues of the case."[49] When plaintiff satisfies her initial burden, "the burden of production shifts to the appointing authority to clearly advance a legitimate non-discriminatory reason for removal through the introduction of admissible evidence."[50] If the *prima facie* case is rebutted, the presumption of discrimination drops from the case and the burden shifts to the plaintiff to show, by a preponderance of the evidence, the authority's proffered legitimate non-discriminatory reason for its action "was motivated by non-merit or discriminatory factors."[51] A plaintiff may make this showing "either directly or persuading the court that a discriminatory reason more likely motivated the employer or indirectly by showing that the employer's proffered explanation is unworthy of credence."[52]

Dr. Kelly-Pimentel argues disparate impact and disparate treatment, and does not dispute she raised these same discrimination claims based on a *Griggs* disparate impact theory and a disparate treatment theory under *Henderson* at her appeal before both the Commission[53] and the Commonwealth Court.[54] Notwithstanding the identical claims of discrimination made before the Commission, Commonwealth Court, and this Court, Dr. Kelly-Pimentel argues the issues are not identical because the issue here is "intentional discrimination, an issue that applies to individuals and could not have been raised against the [Department]."[55] It is true Dr. Kelly-Pimentel brings her claims against Secretary Wetzel, Executive Deputy Secretary Moore Smeal, and Director Davy in their individual capacities and not against the Department. But this does not mean the **issue** before us is not identical to the issue addressed and ruled upon by the Commission and the Commonwealth Court.

To prevail in her §1983 claim, Dr. Kelly-Pimentel must show Defendants, acting under color of state law, deprived her of a right secured by the United States Constitution or federal law.[56] Dr. Kelly-Pimentel must "prove the existence of purposeful discrimination" by showing she "receiv[ed] different treatment from that received by other individuals similarly situated."[57] Dr. Kelly-Pimentel alleges Defendants, acting in their personal capacity, violated her rights protected by the Equal Protection Clause of the Fourteenth Amendment "by racially discriminating against [her] in failing to promote, using pretextual grounds, and failing to protect [her] from harassing and retaliatory conduct."[58] Dr. Kelly-Pimentel argues we should deny Defendants' motion for summary judgment because Defendants "used illicit and illegal tactics to ignore Civil Service rules and state teaching certification requirements in order to prevent [her] promotion . . ., [as] an African American with exemplary qualifications."[59]

The Commission and Commonwealth Court already decided Dr. Kelly-Pimentel's

allegations of discrimination. The Commission identified the issue as: "[w]hether the appointing authority did not select appellant for this position [Education Administration Manager] for reasons motivated by discrimination."[60] The Commission concluded Dr. Kelly-Pimentel "has not presented evidence establishing discrimination violative of Section 905.1 of the Civil Service Act, as amended."[61] As discussed above, Section 905.1 of the Act prohibits Commonwealth officers and employees from discriminating against any person "in recruitment, examination, appointment, training, promotion, retention or any other personnel action" in employment because of "race, national origin or other non-merit factors." The Commonwealth Court, on review of the Commission's decision, considered Dr. Kelly-Pimentel's claims of both technical and traditional discrimination and concluded Dr. Kelly-Pimentel failed to present evidence of technical discrimination and evidence of traditional, race-based discrimination.[62]

Dr. Kelly-Pimentel's argument simply concludes, without elaboration, "the issues are not identical" because her claims of discrimination are now brought against the Defendants individually rather than the Department itself. Dr. Kelly-Pimentel does not explain how the dispositive issue – whether the Department's selection of Ms. Fazio over Dr. Kelly-Pimentel for the Education Administration Manager position is based on race – is any different than what has already been adjudicated by the Commission and Commonwealth Court. Accordingly, we find the issue decided in the Commission and Commonwealth Court is identical to the issue before us, and the first element of the collateral estoppel test is satisfied.

### 2. The Commonwealth Court's decision is a final judgment on the merits.

The Commonwealth Court's February 1, 2017 decision is a final judgment on the merits. Dr. Kelly-Pimentel filed an application for reconsideration on February 27, 2017 denied by the Commonwealth Court as untimely on March 2, 2017.[63] Dr. Kelly-Pimentel did not file a petition

for allowance of appeal from the Commonwealth Court to the Pennsylvania Supreme Court, and the decision of the Commonwealth Court is final.[64]

Dr. Kelly-Pimentel admits a final judgment on the merits, but asserts neither the Commission nor the Commonwealth Court "addressed the traditional discrimination claims as they deemed them not properly developed."[65] To support this argument, Dr. Kelly-Pimentel cites the Commonwealth Court's opinion addressing her contention the Commission failed to address her pretext argument under the *Henderson* standard: "Thus, to the extent the Commission did not address [Kelly-Pimentel's] 'pre-textual argument raised under *Henderson*,' it was under no obligation to do so, as the argument was not properly developed."[66]

We disagree with Dr. Kelly-Pimentel's interpretation of the Commonwealth Court's opinion. First, the Commonwealth Court attributed the Commission's alleged failure to address the pretext argument to *Dr. Kelly-Pimentel's failure* to develop the argument. Secondly, we read the Commission's adjudication to have considered a *prima facie* case of discrimination. After reviewing evidence, the Commission concluded Dr. Kelly-Pimentel presented enough evidence to meet her burden of establishing a *prima facie* case of discrimination, citing *Nwogwugwu*.[67] After making credibility determinations at its evidentiary hearing, the Commission found the Department met its burden of offering a legitimate, non-discriminatory reason for its employment action.[68] Shifting the burden back to Dr. Kelly-Pimentel to show the Department's proffered legitimate, non-discriminatory reason is a pretext for discrimination, the Commission found upon review of the record Dr. Kelly-Pimentel did not meet her burden.[69]

Dr. Kelly-Pimentel additionally argues the Commission and Commonwealth Court's "failure to address *Griggs* . . . and *Henderson* . . . issues proves they were nonessential to the outcome" and her "case before the [Commission] was almost entirely grounded in civil service

rules were proof of technical discrimination was the focal point."[70]  We disagree, finding both the Commission and the Commonwealth Court addressed Dr. Kelly-Pimentel's claims of "traditional" discrimination.

We find the second element of the collateral estoppel test satisfied, finding final judgment on the merits of Dr. Kelly-Pimentel's traditional discrimination claim.

### 3. Same party.

This element is not disputed.

### 4. Dr. Kelly-Pimentel had a full and fair opportunity to litigate her discrimination claims in the Commission and Commonwealth Court.

Dr. Kelly-Pimentel argues she did not have a full and fair opportunity to litigate her discrimination claim, assigning blame to the Department's "failure to produce the backup documentation confirming the Staff Assistant position was the determinative factor in the promotion of Ms. Fazio" and the Department's failure "had a negative result for [her] before" the Commission.[71] Dr. Kelly-Pimentel asserts the Department "failed to respond to Court ordered motions compelling the production of electronic discovery" and we should not allow this to "go unnoticed."[72]

This argument is without merit. This collateral estoppel element focuses on whether Dr. Kelly-Pimentel had a full and fair opportunity to litigate the issue in the *earlier* actions. Dr. Kelly-Pimentel fails to explain how she did not have a full and fair opportunity to litigate her claims of discrimination in the Commission and Commonwealth Court. She complains only of Defendants' failure to comply with discovery orders in this Court prevents her from fully presenting her case before us. This is not the standard.  Under Pennsylvania law, a party is denied a fully and fair opportunity to litigate "only when status procedures fall below the minimum requirements of due process as defined by federal law."[73] Dr. Kelly-Pimentel fails to

identify deprivation of due process in the Commonwealth Court.

Even if her complaints of Defendants' discovery abuses are relevant, we find them without merit. Dr. Kelly-Pimentel received all discovery she requested. Dr. Kelly-Pimentel filed a motion to compel discovery on January 23, 2017.[74] We granted the motion, ordering Defendants to provide all discovery identified in the motion to compel by January 31, 2017.[75] On February 21, 2017, Dr. Kelly-Pimentel filed a second motion to compel discovery.[76] After considering Defendants' response and finding good cause for their short delay in producing fulsome electronic discovery based on illness and working to overcome obstacles in the Commonwealth bureaucracy, we granted, on February 22, 2017, Dr. Kelly-Pimentel's motion in part upon consent and ordered Defendants to produce all outstanding electronic discovery by February 28, 2017.[77] On March 6, 2017, we granted Defendants' motion seeking an extension of time to file summary judgment and *Daubert* motions in light of the parties' interest in pursuing settlement through mediation.[78]

Although clearly understanding available avenues of relief from perceived discovery abuses, Dr. Kelly-Pimentel did not file after February 21, 2017 any further motions to compel or any motion complaining of Defendants' discovery responses. Dr. Kelly-Pimentel argues Defendants produced "a final batch of documents" on March 8, 2017 and suggests she "would prefer an opportunity for a hearing to show that the final batch of documents, eight days beyond the February 28th deadline, are not responsive to the email searched requested in discovery . . . [t]hereby leveling the playing field and affording the Plaintiff with the legitimate opportunity to present a more complete case unmasking the conduct behinds [sic] the scenes."[79] We decline to do so after summary judgment briefing and, in any case, providing her with such an opportunity is not relevant to whether she received a full and fair opportunity to litigate claims of

discrimination in the Commission and Commonwealth Court. We find the fourth element of the collateral estoppel test satisfied.

Collateral estoppel, or issue preclusion, ensures "once an issue is actually and necessarily determined by a court of competent jurisdiction, that determination is conclusive in subsequent suits based on a different cause of action involving a party to the prior litigation."[80] The Commission and the Commonwealth Court considered Dr. Kelly-Pimentel's claims of discrimination and she had the opportunity to obtain a full and fair adjudication. Accordingly, we grant summary judgment in favor of Defendants.

> **B. Even if her claims are not precluded by collateral estoppel, Dr. Kelly-Pimentel adduced no evidence to support her claim of supervisory liability against Secretary Wetzel or a claim for personal liability against Director Davy and Executive Deputy Secretary Moore Smeal.**

Even if her claims are not precluded by collateral estoppel, we find Dr. Kelly-Pimentel failed to meet her burden of adducing evidence necessary under Rule 56 to defend summary judgment.

### 1. Claim against Secretary Wetzel

Dr. Kelly-Pimentel alleges a claim for supervisory liability against Secretary Wetzel. A §1983 claim for supervisory liability cannot be based on *respondeat superior*.[81] Our Court of Appeals recognizes two theories of supervisory liability: first, individuals who are policymakers may be liable under §1983 if it is shown they "with deliberate indifference to the consequences, established and maintained a policy, practice or custom which directly caused the constitutional harm;" and under the second theory, a supervisor may be personally liable under §1983 if he "participated in violating the plaintiff's rights, directed others to violate them, or, as the persons in charge, had knowledge of and acquiesced in their subordinates' violations."[82]

The basis of Dr. Kelly-Pimentel's supervisory liability claim against Secretary Wetzel is

unclear. In her response to summary judgment, Dr. Kelly-Pimentel's argument heading asserts Secretary Wetzel is not entitled to summary judgment because "he has demonstrated deliberate indifference to the discriminatory hiring practices" of the Department.[83] This suggests a liability theory based on policy, practice, or custom causing constitutional harm. The Amended Complaint alleges "policies and procedures in place and the responsibility of Defendant Wetzel" including a "Policy Statement-Equal Employment Opportunity."[84] However, Dr. Kelly-Pimentel does not allege Secretary Wetzel "established or enforced policies and practices directly causing the constitutional violation" required to state a claim based on policy, practice, or custom.[85]

Dr. Kelly-Pimentel cites to the Department's 2014 Equal Employment Opportunity Plan ("EEO Plan") as evidence the Department maintains discriminatory hiring practices. The EEO Plan recognizes a "problem" with the underutilization of "females and/or minorities" in seven of fourteen job groups.[86] There is no evidence the Department's EEO Plan established an unconstitutional policy, when implemented, injured Dr. Kelly-Pimentel.[87] At most, the EEO Plan recognizes an underutilization of females and minorities which the Department seeks to ameliorate through its EEO Plan, but the EEO Plan is not a policy, practice, or custom causing the constitutional harms complained of by Dr. Kelly-Pimentel.

Dr. Kelly-Pimentel's opposition to summary judgment also suggests she bases her supervisory liability claim on the second theory, alleging Secretary Wetzel's "express or implied approval" of Director Davy and Executive Deputy Director Moore Smeal's actions. Although she admits Secretary Wetzel had no involvement in interviewing and ranking candidates,[88] Dr. Kelly-Pimentel asserts Secretary Wetzel is liable as the "Captain of the DOC Ship." Supervisory liability cannot be based on *respondeat superior*; to succeed on her claim, Dr. Kelly-Pimentel must show Secretary Wetzel "participated in violating plaintiff's rights, directed others to violate

them, or as the perso[n] in charge, had knowledge of and acquiesced in their subordinates' violations."[89] Dr. Kelly-Pimentel does not cite evidence demonstrating Secretary Wetzel did so, and there is no genuine issue of material fact on this issue.

Dr. Kelly-Pimentel suggests even if Secretary Wetzel "was unaware of the situation in the present case, the filing of this complaint in federal court should have brought it to his attention" and "now is the time to take action."[90] This is insufficient to hold Secretary Wetzel liable on a theory of supervisory liability for the Department's decision to hire Ms. Fazio. Dr. Kelly-Pimentel must show Secretary Wetzel's personal involvement through "personal direction or of actual knowledge and acquiescence" at the time of the decision, not after-the-fact knowledge.[91]

Secretary Wetzel is entitled to summary judgment on Dr. Kelly-Pimentel's supervisory liability claims.

### 2. There is no evidence to support a claim for individual liability against Director Davy and Executive Deputy Secretary Moore Smeal for discrimination.

Dr. Kelly-Pimentel asserts her equal protection[92] claims against Directory Davy and Executive Deputy Secretary Moore Smeal in their individual capacities. Claims against officials in their personal capacity "seek to impose individual liability upon a government officer for actions taken under color of state law."[93] To establish personal liability in her § 1983 action, Dr. Kelly-Pimentel must show these individual Defendants, "acting under color of state law, caused the deprivation of a federal right."[94]  An equal protection claim requires a showing of intentional discrimination.[95]

Dr. Kelly-Pimentel asks us to apply the burden shifting analysis to her claim of employment discrimination, arguing Defendants failed to proffer a legitimate non-discriminatory

reason for their conduct.[96] Defendants agree the *McDonnell Douglas* burden shifting analysis developed in the context of Title VII applies here.[97] Our Court of Appeals applies the *McDonnell Douglas* framework to allegations of race discrimination under § 1983.[98]

Under the familiar *McDonnell Douglas* three-step framework, Dr. Kelly-Pimentel must first establish a *prima facie* case of discrimination;[99] if she does so, Defendants must provide a legitimate reason for their conduct; and, if the Defendants meet their burden, the presumption of discriminatory action raised by the *prima facie* case is rebutted and Dr. Kelly-Pimentel must show by the preponderance of the evidence Defendants' reason is pretextual.[100]

Defendants satisfy their burden of production by "introducing evidence which, taken as true, would permit the conclusion that there was a nondiscriminatory reason for the unfavorable employment decision."[101] A defendant's burden at this stage is "relatively light," and it "need not prove that the tendered reason *actually* motivated its behavior, as throughout this burden-shifting paradigm the ultimate burden of proving intentional discrimination always rests with the plaintiff."[102]

Defendants proffer the following legitimate non-discriminatory reasons for selecting Ms. Fazio for the Education Administration Manager position: her knowledge of and experience with the Department's principles, policies, and procedures and Ms. Fazio's targeted responsive answers to questions asked at the interview reflecting a recognition and understanding of specific goals and actions of the Bureau of Corrections Education. Defendants cite Director Davy's memo to Mr. Chieke ranking each candidate and summarizing the reasons for each ranking.[103] Ms. Fazio is ranked not only for her knowledge and experience of Department policies and procedures, but her experience in dealing with Department staff at all levels, handling highly confidential and sensitive information, demonstration of excellent interpersonal skills during the

interview, previous work experience demonstrating an ability to prioritize, multitask, and work in a demanding environment, and responses to question regarding the GED electronic testing process and her "impressive" responses to coordinating this testing process.[104] Dr. Kelly-Pimentel is ranked fifth because of her lack of knowledge of Central Office operation and failure to demonstrate interpersonal skills necessary for the position.[105] At his deposition, Director Davy testified he and Executive Deputy Secretary Moore Smeal discussed each candidate, looked at each candidate comprehensively, and made a decision based on their assessment of the best candidate for the position.[106] At the Commission's hearing, Director Davy similarly testified to the reasons for his selection of Ms. Fazio as the strongest candidate.[107] Executive Deputy Secretary Moore Smeal similarly testified at the Commission's hearing to her reasons for selecting Ms. Fazio.[108]

Dr. Kelly-Pimentel argues Defendants failed to offer a legitimate non-discriminatory reason for their conduct. We disagree. Defendants articulated a legitimate non-discriminatory reason why they selected Ms. Fazio for the position. Under *McDonnell Douglas*, Dr. Kelly-Pimentel must show Defendants' legitimate non-discriminatory reasons are a pretext for race discrimination. To show requisite pretext to defeat Defendants' motion, Dr. Kelly-Pimentel "must point to some evidence, direct or circumstantial, from which a factfinder could reasonably either (1) disbelieve the employer's articulated legitimate reasons; or (2) believe that an invidious discriminatory reason was more likely that not a motivating or determinative cause of the employer's action."[109] Dr. Kelly-Pimentel's evidence "if it relates to the credibility of the employer's proffered justification, must demonstrate such weaknesses, implausibilities, inconsistencies, incoherencies, or contradictions in the employer's proffered legitimate reasons for its action that a reasonable factfinder could rationally find them unworthy of credence."[110]

Dr. Kelly-Pimentel points to following evidence she contends are examples from the record of Defendants' "illegal and illicit conduct": Defendants failed to follow state teaching certification laws; Defendants falsified evaluations for a Staff Assistant position; Defendants ignored credentials when they ranked candidates for the Education Administration Manager position; Defendants withheld evidence supporting the Equal Employment Review Certificate; Defendants failed to comply with motions to compel; and former Equal Employment Opportunity director, Raphael Chieke, "may have been pressured to testify falsely" at the April 30, 2014 hearing before the Commission. We take each in turn.

### *Defendants' failure to follow state teaching certification law*

Dr. Kelly-Pimentel asserts Director Davy "operated outside the scope of his teaching certificate while employed as Director of BCE" because his certification is only for elementary school.[111] The propriety of whether *Director Davy* could supervise principals is irrelevant to the Defendants' legitimate non-discriminatory reasons for hiring Ms. Fazio. Even if we construe the evidence regarding Directory Davy's certifications in the light most favorable to Dr. Kelly-Pimentel, there is no nexus to the question of whether Defendants' proffered justification is a pretext for discriminatory promotion practices.

### *Defendants falsified evaluations for a Staff Assistant position*

Dr. Kelly-Pimentel asserts Ms. Fazio applied for, and began working, in the position of Staff Assistant in the Department's Central Office in April 2014, one month before her interview for the Education Administration Manager position, and her position in the Staff Assistant position "was the deciding factor in her promotion." Dr. Kelly-Pimentel alleges Ms. Fazio's employee performance review in the Staff Assistant position was "falsified" because the evaluator checked the job status as "civil service" when it is not a civil service position. Dr.

Kelly-Pimentel does not identify whether Directory Davy or Executive Deputy Secretary Moore Smeal filled out this report and how classifying the Staff Assistant position as civil service – correctly or incorrectly – has any bearing on the question of whether Defendants' proffered justification is a pretext for discriminatory practices.

### *Defendants ignored credentials when they ranked candidates for the Education Administration Manager position*

Dr. Kelly-Pimentel disputes the ranking memo prepared by Director Davy for Mr. Chieke because it is undated and makes no mention of levels of education, teaching certifications, related work experience, or other job related credentials, and "appears to be based solely on the responses to the interview questions, a violation of the Civil Service interview guide."[112] Dr. Kelly-Pimentel does not explain how the candidates' response to interview questions is related to race discrimination or how the failure to mention education level and teaching certifications are at all relevant.[113] Dr. Kelly-Pimentel's dispute focuses on her higher education level than that of Ms. Fazio, but she does not dispute levels of education or teaching certifications were not the only criteria for selection.

### *Defendants withheld evidence supporting the Equal Employment Review Certificate*

Directory Davy and Executive Deputy Secretary Moore Smeal filled out an Equal Employment Opportunity Review Certificate ("EERC") dated August 22, 2014.[114] The document includes the content of Director Davy's ranking memo to Mr. Chieke. Dr. Kelly-Pimentel asserts Defendants withheld evidence supporting the EERC form, citing paragraph 90 of her additional statement of fact at ¶ 90. Dr. Kelly-Pimentel does not explain what "evidence" is withheld from the EERC form or provide us with cite supporting such an accusation. Although unclear, we construe Dr. Kelly-Pimentel's argument as taking issue with Defendants' production on January 31, 2017 of the "backup" pages to the EERC document. We note Defendants'

appendix includes only the first two pages of the EERC, while Dr. Kelly-Pimentel's appendix includes not only the first two pages of the EERC form, but three additional narrative pages.[115] We cannot know how or why the complete EERC form was or was not produced; however, we cannot ascribe to it any nefarious inference to the question of whether Defendants' proffered reasons for hiring Ms. Fazio over Dr. Kelly-Pimentel is a pretext for discrimination.

***Defendants failed to comply with motions to compel and former Equal Employment Opportunity director, Raphael Chieke, "may have been pressured to testify falsely" at the April 30, 2014 hearing before the Commission.***

As discussed above, Dr. Kelly-Pimentel filed two motions to compel which we granted. To the extent Defendants failed to comply with our discovery orders, Dr. Kelly-Pimentel failed to file motions objecting to Defendants' document productions. In any case, discovery disputes in 2017 are not relevant whether Defendants' reasons in May 2014 are pretext for discrimination.

Dr. Kelly-Pimentel additionally asserts Mr. Chieke "may have been pressured to testify falsely" before the Commission. Reviewing her cites, it appears she disputes the veracity of Mr. Chieke's testimony before the Commission and Executive Deputy Director Moore Smeal's deposition testimony regarding her knowledge of Dr. Kelly-Pimentel's email to Brittany Chizer, Department Human Resource Assistant, and copied to Mr. Chieke. We find nothing in the record cited by Dr. Kelly-Pimentel supporting an assertion Mr. Chieke "may have been pressured" to falsely testify, and we do not see the nexus between such an assertion and whether the Department's proffered reason for selecting Ms. Fazio is pretextual.

Dr. Kelly-Pimentel fails to present evidence from which a reasonable jury could either discredit Defendants' proffered reasons for their actions or believe an invidious discriminatory reason is more likely than not a motivating or determinative cause of their actions. Dr. Kelly-

Pimentel fails to carry her burden of production on the issue of pretext under the third step of the *McDonnell Douglas* framework.

In their Statement of Undisputed Material Facts, Defendants assert "race was not used as a factor in the selection of Fazio for the position," citing to Director Davy's deposition testimony, Executive Deputy Secretary Moore Smeal's deposition, and their testimony before the Commission.[116] Dr. Kelly-Pimentel responds: "statements made by the Defendants regarding race in this case be dismissed as self-serving," but provides no cite showing a genuine issue as to this material fact. Dr. Kelly-Pimentel cannot rest on mere allegations, but must present actual evidence creating a genuine issue as to a material fact for trial.[117] Plaintiffs must "go beyond the pleadings and by [their] own affidavits, or by the 'depositions, answers to interrogatories, and admissions on file,' designate 'specific facts showing that there is a genuine issue for trial.'"[118] She must "do more than simply show that there is some metaphysical doubt as to the material facts."[119] "[U]nsupported allegations ... and pleadings are insufficient to repel summary judgment."[120]

## III. Conclusion

We find Dr. Kelly-Pimentel's equal protection claim precluded by collateral estoppel, having already litigated the issue of discrimination based on disparate treatment before the Commission and Commonwealth Court. Even if collateral estoppel did not preclude Dr. Kelly-Pimentel's claims, she fails to adduce evidence of discrimination. In the absence of evidence from which she could prevail, summary judgment in favor of Defendants is granted.

---

[1] Our Policies require a Statement of Undisputed Material Facts ("SUMF") and an appendix in support of summary judgment. Defendants filed their SUMF and appendix at ECF Doc. Nos. 53, 54. Dr. Kelly-Pimentel responded to Defendants' SUMF, added additional facts she contends are

material to summary judgment, and supplemented the appendix with additional exhibits (ECF Doc. No. 57, 56-4). References to exhibits in the appendices shall be referred to by Bates number, for example, "1a."

[2] SUMF at ¶ 1.

[3] *Id.* at ¶¶ 7, 8.

[4] *Id.* at ¶¶ 14-16; 21a-23a; 27a.

[5] *Id.* at ¶¶ 2, 5; *see* 71 P.S. § 61(a).

[6] *Id.* at ¶¶ 4, 6.

[7] SUMF at ¶¶ 9-10. Director Davy retired in June 2016. *Id.* at ¶ 10.

[8] *Id.* at ¶¶ 18-19.

[9] *Id.* at ¶¶ 22, 24, 27.

[10] *Id.* at ¶¶ 25-26.

[11] *Id.* at ¶¶ 28-29.

[12] *Id.* at ¶¶ 33-35.

[13] *Id.* at ¶ 36.

[14] *Id.* at ¶¶ 36-37. Dr. Kelly-Pimentel disputes her application packet is complete. *See* Plaintiff's response to SUMF at ¶ 37 (ECF Doc. No. 57). Dr. Kelly-Pimentel submitted documents at her May 14, 2014 interview (891a-910a) (ECF Doc. No. 56-6) after submitting an application with supporting documentation on March 22, 2014 (71a-112a). Defendants do not dispute this. *See* Defendants' Response to Plaintiff's Statement of Additional Material Facts at ¶¶ 85, 86 (ECF Doc. No. 59).

[15] SUMF at ¶¶ 38-39.

[16] *Id.*

[17] *Id.* at ¶ 40.

[18] *Id.* at ¶ 49.

[19] *Id.* at ¶¶ 45-46.

[20] *Id.* at ¶¶ 47-49.

[21] *Id.* at ¶ 51; 317a-318a.

[22] SUMF at ¶ 52.

[23] *Id.* at ¶ 53.

[24] *Id.* at ¶ 54; 330a.

[25] SUMF at ¶ 55.

[26] *Id.* at ¶ 56.

[27] *Id.* at ¶ 58; 332a-381a.

[28] SUMF at ¶ 59.

[29] *Kelly-Pimentel v. State Civil Serv. Comm'n*, No. 72 C.D. 2016, 2017 WL 429514, at * 2 (Pa. Commw. Ct. Feb. 1, 2017); 866a-872a.

[30] *Id.* at *6.

[31] On February 16, 2016, the Honorable Mark R. Hornak granted Defendants' motion to dismiss, dismissing with prejudice the Title VII claim but granting Dr. Kelly-Pimentel leave to file an amended complaint (ECF Doc. Nos. 12, 13).

Dr. Kelly-Pimentel filed an amended complaint, dropping the Department as a defendant, and alleging violations of the First and Fourteenth Amendment under 42 U.S.C. § 1983, Title IX of the Education Amendments of 1972 (20 U.S.C. § 1681) and Pennsylvania statute against Secretary Wetzel, Executive Deputy Secretary Moore Smeal, and Director Davy in their individual capacities (**ECF Doc. No. 14).** On August 29, 2016, after oral argument on Defendants' motion to dismiss the amended complaint, Judge Hornak entered an order dismissing with prejudice the Title IX and §1983 First Amendment claims; dismissing without prejudice the state statutory claims; and denying the motion to dismiss the § 1983 Fourteenth Amendment equal prote**ction race discrimination claim** (ECF Doc. No. 28 (text order)).

[32] Summary judgment is proper when "the movant shows that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed.R.Civ.P. 56(a). A dispute as to a material fact is genuine if "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc*., 477 U.S. 242, 255 (1986). On a motion for summary judgment, "we view the underlying facts and all reasonable inferences therefrom in the light most favorable to the party opposing the motion." *Mancini v. Northampton Cnty.*, 836 F.3d 308, 313 (3d Cir. 2016) (quoting *Blunt v. Lower Merion Sch. Dist.*, 767 F.3d 247, 265 (3d Cir. 2014)). "The party seeking summary judgment 'has the burden of demonstrating that the evidentiary record presents no genuine issue of material fact.'" *Parkell v. Danberg*, 833 F.3d 313, 323 (3d Cir. 2016) (quoting *Willis v. UPMC Children's Hosp. of Pittsburgh*, 808 F.3d 638, 643 (3d Cir. 2015)). If the movant carries its burden, "the

nonmoving party must identify facts in the record that would enable them to make a sufficient showing on essential elements of their care for which they have the burden of proof." *Willis*, 808 F.3d at 643 (citing *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986)). "If, after adequate time for discovery, the nonmoving party has not met its burden, pursuant to Federal Rule of Civil Procedure 56, the court must enter summary judgment against the nonmoving party." *Willis*, 808 F.3d at 643 (citing *Celotex Corp.*, 477 U.S. at 322-323).

[33] *Peloro v. United States*, 488 F.3d 163, 174 (3d Cir. 2007).

[34] *Edmundson v. Borough of Kennett Square*, 4 F.3d 186, 189 (3d Cir.1993) (citations omitted); *Allen v. McCurry*, 449 U.S. 90, 96 (citing 28 U.S.C. § 1738).

[35] *Britt v. United Steel Workers of America Local 2367*, 319 F.App'x 89, 90 (3d Cir. 2008) (quoting *Lance v. Dennis*, 546 U.S. 459, 466 (2006)).

[36] *Hitchens v. Cty. of Montgomery*, 98 F.App'x 106, 111 (3d Cir. 2004) (citing *Greenleaf v. Garlock, Inc.*, 174 F.3d 352, 357-358 (3d Cir. 1999). Similarly, federal collateral estoppel, or issue preclusion, "prevents parties form relitigating an issue that has already been actually litigated. The prerequisites for the application of issue preclusion are satisfied when: (1) the issue sought to be precluded [is] the same as that involved in the prior action; (2) that issue [was] actually litigated; (3) it [was]determined by a final and valid judgment; and (4) the determination [was] essential to the prior judgment." *Peloro v. United States*, 488 F.3d 163, 174-175 (3d Cir. 2007) (quoting *Burlington N. R.R. Co. v. Hyundai Merch. Marine Co.*, 63 F.3d 1227-1231-32 (3d Cir. 1995) (internal quotations omitted)). Dr. Kelly-Pimentel's brief in opposition to Defendants' motion for summary judgment analyzes Pennsylvania's four factor test, but adds the fourth factor from the federal test. Under either analysis, the outcome is the same.

[37] 71 P.S. § 741.951(b).

[38] 71 P.S. § 741.905a (emphasis added).

[39] *Price v. Luzerne/Wyoming Counties Area Agency on Aging*, 672 A.2d 409, 411, n.4 (Pa. Commw. Ct. 1996) (citing *Pronko v. Dept. of Revenue*, 539 A.2d 456 (Pa. Commw. Ct. 1988)).

[40] 401 U.S. 424 (1971).

[41] 560 A.2d 859 (Pa. Commw. Ct. 1989), *appeal denied*, 524 Pa. 633, 574 A.2d 73 (1990).

[42] Brief at 5-6 (ECF Doc. No. 58).

[43] *Griggs*, 401 U.S. at 431.

[44] *Id.*

[45] *Id.* at 432.

[46] 532 A.2d 315 (Pa. 1987).

[47] 411 U.S. 792 (1973); *see Henderson*, 560 A.2d at 863; *Commonwealth Dep't. of Health v. Nwogwugwu*, 594 A.2d 847, 849-850, n.5 (Pa. Commw. Ct. 1991).

[48] *Nwogwugwu*, 594 A.2d at 850.

[49] *Id.* (citing *Henderson*, 560 A.2d at 863).

[50] *Nwogwugwu* (citing *Henderson*, 560 A.2d at 864).

[51] *Nwogwugwu* (citing *Snipas v. Dep't. of Public Welfare*, 405 A.2d 1366 (Pa. 1979).

[52] *Nwogwugwu*, 594 A.2d at 850-851 (quoting *Texas Dep't. of Cmty. Affiairs v. Burdine*, 450 U.S. 248, 256 (1981)).

[53] Brief at 6 (ECF Doc. No. 58); 920a-924a.

[54] 928a-930a.

[55] Brief at 6 (ECF Doc. No. 58).

[56] *Am. Mfrs. Mut. Ins. Co. v. Sullivan*, 526 U.S. 40, 49-50 (1999).

[57] *Blunt v. Lower Merion Sch. Dist.*, 767 F.3d 247, 273 (3d Cir. 2014) (quoting *Andrews v. City of Phila.*, 895 F.2d 1469, 1478 (3d Cir. 1990) (internal quotations omitted).

[58] Amended Complaint at ¶ 3(a) (ECF Doc. No. 14). The parties do not address Dr. Kelly-Pimentel's allegation Defendants failed to "protect her from harassing and retaliatory conduct" in their summary judgment briefing. The Commonwealth Court noted Dr. Kelly-Pimentel "briefly mention[ed] retaliation in her brief, quoting testimony indicated that Davy was aware of a grievance she filed against the Department for a separate matter. To the extent that Petitioner now raises an argument that the Department retaliated against her for filing a grievance, that argument was not raised before the Commission and, thus, is waived on appeal." *Kelly-Pimentel*, 2017 WL 429514 at *6, n.13.  Dr. Kelly-Pimentel does not mention or provide us with any argument or evidence supporting a retaliation or harassment claim, and we consider it abandoned.

[59] Plaintiff's response in opposition to Defendants' motion for summary judgment at ¶ 5 (ECF Doc. No. 56).  Similarly, Dr. Kelly-Pimentel argues "[D]efendants failed to offer a legitimate explanation for their conduct. Rather, the record is replete with illegal and illicit conduct. The most glaring examples are failing to follow state teaching certification laws, falsifying evaluations for the Staff Assistant position and ignoring credentials during the ranking for the [Education Administration Manager Western Region] position." Brief in opposition to summary judgment at 9 (ECF Doc. No. 58).

[60] 332a.

[61] 380a.

[62] *Kelly-Pimentel*, 2017 WL 429514 at * 6.

[63] We take judicial notice of the Commonwealth Court's docket sheet in *Kelly-Pimentel v. State Civil Service Commission*, No. 72 C.D. 2016.

[64] *Id.*

[65] Brief at 6 (ECF Doc. No. 58).

[66] *Kelly-Pimentel*, 2017 WL 429514 at *6.

[67] 372a. As discussed above, *Nwogwugwu*, is a 1991 opinion Commonwealth Court opinion outlining the *prima facie* case for discrimination under Section 905.1 of the Act as previously set out in the Commonwealth Court's 1989 *Henderson* opinion.

[68] 372a-374a.

[69] 374a- 379a.

[70] Brief at 7 (ECF Doc. No. 58). *See* n. 39, *supra*.

[71] *Id.* at 6.

[72] *Id.* at 7.

[73] *Bradley v. Pittsburgh Bd. of Educ.*, 913 F.2d 1064, 1074 (3d Cir. 1990); *Ochner v. Stedman*, 572 F.App'x 143, 148 (3d Cir. 2014); *Logan v. Bd. of Educ. of Sch. Dist. of Pittsburgh*, No. 15-499, 2016 WL 7232571, *4 (W.D. Pa. Dec. 14, 2016).

[74] ECF Doc. No. 40.

[75] ECF Doc. No. 41.

[76] ECF Doc. No. 42.

[77] ECF Doc. No. 44.

[78] ECF Doc. Nos. 46, 47.

[79] Brief at 7 (ECF Doc. No. 58).

[80] *Montana v. United States*, 440 U.S. 147, 153 (1979).

[81] *Chavarriaga v. N.J. Dep't of Corr.*, 806 F.3d 210, 227 (3d Cir. 2015).

[82] *A.M. ex rel. J.M.K. v. Luzerne Cnty. Juvenile Det. Ctr.*, 372 F.3d 572, 586 (3d Cir. 2004); *Parkell v. Danberg*, 833 F.3d 313, 330 (3d Cir. 2016).

[83] Brief at 8 (ECF Doc. No. 58).

[84] Amended Complaint at ¶ 7.a. Dr. Kelly-Pimentel identifies the "Policy Statement" as a February 26, 2014 memorandum issued by Secretary Wetzel. We cannot locate the February 26, 2014 memorandum in the record.

[85] *Rosa-Diaz v. Dow*, No. 16-4349, 2017 WL 1097101, *3, n. 6 (3d Cir. Mar. 23, 2017) (quoting *Chavarriaga*, 806 F.3d at 223).

[86] 887a.

[87] *Chavarriaga,* 806 F.3d at 223 (citing *Sample v. Diecks*, 885 F.3d 1099, 1118 (3d Cir. 1989)).

[88] *See* Plaintiff's Response to SUMF at ¶ 40 (ECF Doc. No. 57).

[89] *Parkell*, 833 F.3d at 330.

[90] Brief at 9 (ECF Doc. No. 58). Dr. Kelly-Pimentel asserts she "has been passed over in two promotions subsequent to the filing of this case." *Id.* These allegations are not contained in the Amended Complaint and are not material to resolution of this action.

[91] *Rode v. Dellarciprete*, 845 F.2d 1195, 1207 (3d Cir. 1988). *See Rosa-Diaz,* 2017 WL 1097101 at *3 (claim for supervisory liability under §1983 properly dismissed because plaintiff "premised [claims] solely on the Supervisor Defendants'' after-the-fact participation in reviewing grievances or appeals, generally an insufficient basis to establish 'personal knowledge' for purposes of § 1983") (citing *Rode*, 845 F.2d at 1208)).

[92] The Equal Protection Clause of the Fourteenth Amendment provides "[n]o state shall . . . deny to any person within its jurisdiction the equal protection of the laws." U.S. Const. Amend. XIV, §1.

[93] *Hafer v. Melo*, 502 U.S. 21, 25 (1991).

[94] *Hafer*, 502 U.S. at 25 (quoting *Kentucky v. Graham*, 473 U.S. 159, 166 (1985)).

[95] *Antonelli v. New Jersey*, 419 F.3d 267, 274 (3d Cir. 2005) (quoting *City of Cuyahoga Falls v. Buckeye Cmty. Hope Found.*, 538 U.S. 188, 194 (2003)).

[96] Brief at 9 (ECF Doc. No. 58). Dr. Kelly-Pimentel cites the burden-shifting analysis articulated in *St. Mary's Honor Center v. Hicks*, 509 U.S. 502 (1993). In *Hicks*, the Supreme Court further elucidated its earlier decisions in *Texas Dept. of Cmty. Affairs v. Burdine*, 450 U.S. 248 (1981) and *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973) which developed the framework for the allocation of the burden of production and proof in Title VII discriminatory treatment

cases. *Hicks*, 590 U.S. 506. Dr. Kelly-Pimentel's Amended Complaint articulates an equal protection claim based on disparate treatment. *See* Amended Complaint at ¶ 3.a. (ECF Doc. No. 14).

[97] Reply Brief at 1 (ECF Doc. No. 60).

[98] *Stewart v. Rutgers, The State University*, 120 F.3d 426, 432 (3d Cir. 1997).

[99] In their Reply Brief, Defendants argue Dr. Kelly-Pimentel did not establish even a prima facie case of discrimination. Reply Brief at 2-4 (ECF Doc. No. 60). For purposes of the summary judgment analysis, we will presume Dr. Kelly-Pimentel established a prima facie case of discrimination, and focus on the second and third steps of the *McDonnell Douglas* framework.

[100] *Jones v. Se. Pa. Transp. Auth.*, 796 F/3d 323. 326 (3d Cir. 2015) (citing *Fuentes v. Perskie*, 32 F.3d 759, 763 (3d Cir. 1994)); *Sarullo v. U.S. Postal Service*, 352 F.3d 789, 797 (3d Cir. 2003).

[101] *Fuentes v. Perskie*, 32 F.3d 759, 763 (3d Cir. 1994) (citing *Hicks*, 509 U.S. at 508-510).

[102] *Fuentes*, 32 F.3d at 763 (citing *Burdine*, 450 U.S. at 253).

[103] 299a – 300a.

[104] 299a.

[105] *Id.*

[106] 813a, 817a.

[107] 671a.

[108] 715a-716a.

[109] *Burton v. Teleflex Inc.,* 707 F.3d 417, 427 (3d Cir. 2013) (quoting *Fuentes*, 32 F.3d at 764).

[110] *Id.* (internal quotations and citations omitted).

[111] Plaintiff's Response to SUMF at ¶ 10 (ECF Doc. No. 57).

[112] *Id.* at ¶ 38.

[113] A reading of the ranking memo  shows work experience and other factors are discussed for each candidate. 299a-300a.

[114] 912a-916a.

[115] *Compare* 317a-318a *with* 912a-916a.

[116] SUMF at ¶ 44 (ECF Doc. No. 53).

[117] *Anderson,* 477 U.S. at 248; *Siegel Transfer, Inc. v. Carrier Express, Inc.,* 54 F.3d 1125, 1130–31 (3d Cir.1995).

[118] *Celotex,* 477 U.S. at 324.

[119] *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.,* 475 U.S. 574, 586 (1986).

[120] *Schoch v. First Fidelity Bancorp.,* 912 F.2d 654, 657 (3d Cir.1990); *see also Quiroga v. Hasbro, Inc.,* 934 F.2d 497, 500 (3d Cir. 1991) (party opposing summary judgment must present more than just 'mere allegations, general denials, or ... vague statements to show the existence of a genuine issue); Fed.R.Civ.P. 56(e) (requiring nonmoving party to "set forth specific facts showing that there is a genuine issue for trial.")